Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| CASE NUMBER | 02 CR 51 | DATE | DEC. 10, 2002 |
| CASE TITLE | UNITED STATES OF AMERICA v. LINDSEY BELL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's objections to the presentence report are granted in part and denied in part. At the time of sentencing, the probation officer will be directed to modify the presentence investigation report to reflect the modifications discussed herein that result in a sentencing guideline range of 77 to 96 months. It is further ordered that, at the time of sentencing, the parties be prepared to address the other issues discussed in attached Memorandum Opinion.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel and probation officer by telephone. | DEC 12 2002 date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | 32 |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | 02 DEC 11 PM 2:54 | |
| cw | courtroom deputy's initials | FILED 12 10 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    No. 02 CR 51
                                    )
LINDSEY BELL,                       )
                                    )
            Defendant.              )

DOCKETED
DEC 1 2 2002

## MEMORANDUM OPINION AND ORDER

In 1994, defendant Lindsey Bell participated in the beating death of Annette Williams. Bell was a member of the Mickey Cobras street gang and the beating was being imposed because gang members believed Annette Williams had violated a gang rule. The discipline being imposed on Annette Williams was a four-minute "physical violation." Six men participated in the beating, including Bell, Carl Williams, and Jamaine Jackson. Apparently death was not the specifically intended result of the beating, but that is what resulted from the beating which included hitting Williams in the head with a baseball bat. Statements subsequently provided to police officers implicated other members of the Mickey Cobras, including Clarence Hankton being implicated as one of the persons who ordered or passed on orders for the discipline.



In state court proceedings, Bell pleaded guilty to murder and was sentenced to 40 years' incarceration. Bell was not required to testify as part of any plea agreement. Carl Williams and Jackson went to trial and were found guilty. They were both sentenced to 60 years' incarceration.

In 1999, Bell, Jackson, and Carl Williams were brought before a federal grand jury to testify. All three were granted immunity from use of their testimony. Carl Williams declined to testify,[1] but Bell and Jackson both provided testimony as to Hankton ordering the discipline of Annette Williams. An indictment was returned against Hankton charging him with three counts of violent crimes in the aid of racketeering in violation of 18 U.S.C. § 1959. See United States v. Hankton, 99 CR 272 (N.D. Ill.) (Manning, J.) ("Hankton I"). The indictment initially remained under seal.

In January 2001, Hankton was arrested based on another indictment charging him with a drug conspiracy. See United States v. Hankton, 01 CR 1 (N.D. Ill.) (Norgle, J.) ("Hankton II"). On the same day Hankton was arrested, the indictment in 99 CR 272 was unsealed. As a security precaution, it was arranged that Bell and Jackson would provide videotaped depositions for use at the Hankton I trial. Hankton was present for the depositions which were to occur on August 23, 2001. Hankton and Jackson were again immunized, but this time both

---

[1] Carl Williams was held in civil contempt until the term of the grand jury expired after 18 months. No further charges were brought against Williams.

refused to provide any testimony. The same day, both were held in civil contempt in an attempt to induce them to testify. The civil contempt order was lifted on January 8, 2002 as to Bell and had been lifted on November 16, 2001 as to Jackson. At the sentencing hearing, the parties and/or probation officer shall inform the court as to whether (a) the court ordered an interruption of his state term and (b) whether the state system will or will not credit Bell for time served on his state sentence during the time he was being held in civil contempt in federal court.

Proceedings against Hankton on the Hankton I charges have been indefinitely postponed and may be dropped. At this time, a status hearing in Hankton I is set in January 2003.

Bell is charged in the pending indictment with one count of criminal contempt in violation of 18 U.S.C. § 401(3) and one count of obstruction of justice in violation of 18 U.S.C. § 1503. Similar charges were also brought against Jackson. See United States v. Jackson, 02 CR 52 (N.D. Ill.) (Kennelly, J.). In July 2002, Bell entered a blind plea as to both counts of the indictment.[2]

In the presentence investigation report ("PSR"), the probation officer recommends determining Bell's sentencing guideline range based on the obstruction of justice guideline

---

[2]Jackson entered into a plea agreement in his case and pleaded guilty to the contempt charge only. He is to be sentenced in February 2003. Similar to Bell, the government will contend at Jackson's sentencing that he should be sentenced based on the sentencing guideline for obstruction of justice.

(U.S.S.G. § 2J1.2) based on the underlying offense of first degree murder. The PSR proposes a total offense level of 27 and a criminal history category of IV for a guideline range of 100 to 125 months. It is also proposed that the sentence is to be consecutive to the state sentence currently being served because the present offense was committed while Bell was serving time on the state murder sentence.[3] See U.S.S.G. § 5G1.3(a). Bell presently contends that his refusal to testify is not motivated by a desire to aid Hankton in avoiding conviction on the § 1959 charges in Hankton I. He contends that his motivation is to avoid any retaliation upon his family or himself, with his family being his primary concern. Therefore, he contends that the contempt charge should not be based on obstruction of justice and further, that the obstruction of justice count itself should not take into account the cross referencing provisions of § 2J1.2(c)(1). Alternatively, defendant contends the court should depart from applying § 5G1.3(a) and instead impose only a portion of the guideline range consecutively. The government argues in favor of accepting the recommendation of the PSR.

---

[3]According to the PSR, Bell's earliest projected parole date is in May 2014. (The PSR is inconsistent as to whether that date is May 17 [p. 6, l. 150] or May 7 [p. 10, l. 249].) However, it is also reported that Bell has had a number of disciplinary infractions so he may not be released at the earliest possible date. Also, it is unclear whether this projected date takes into consideration whether the state sentence ran during the time Bell was held in civil contempt. The parties and probation officer should be prepared to clarify these points at the time of sentencing.

Bell pleaded guilty to both counts of the indictment. Count Two is an obstruction of justice charge under 18 U.S.C. § 1503. Count Two expressly alleges Bell "corruptly influenced, obstructed, and impeded the due administration of justice." At the plea colloquy, although there was no express statement in the government's factual description that Bell intended to prevent Hankton's conviction, Bell did not disagree with the government's description of the facts as that he "obstructed and impeded" the prosecution and that he "knew" there would be an "impact" on the prosecution. At the plea colloquy, defendant's counsel also stated that defendant had some fears about testifying, but not enough to constitute duress under the Guidelines.

Under U.S.S.G. § 3D1.2(a), defendant's two offenses are to be grouped. The guideline for contempt is § 2J1.1, which states to apply § 2X5.1 (Other Offenses). Under § 2X5.1, the "most analogous offense guideline" is to be applied. The two likely analogous guidelines are § 2J1.2 (Obstruction of Justice) or § 2J1.5 (failure to appear by a material witness). Which one is more analogous, however, is largely academic because § 2J1.2 would clearly apply to the Count Two obstruction of justice charge. Under grouping, the more serious charge (that is the highest offense level) is the one that determines the offense level for the grouped counts. U.S.S.G. § 3D1.3(a).

Even if it mattered whether guideline 2J1.2 or 2J1.5 applied to the contempt count, case law supports that § 2J1.2 is the appropriate guideline to apply to the contempt in this case.

In United States v. Ortiz, 84 F.3d 977, 980-82 (7th Cir.), cert. denied, 519 U.S. 900 (1996), the Seventh Circuit held that § 2J1.5, not § 2J1.2, applied to defendant Hurtado's contempt for failure to provide testimony. In that case, though, it was found that Hurtado declined to testify because he did not want to be known as a snitch or informer, not because he had any intent to obstruct Ortiz's prosecution. The present case is different. Unlike the present case, Hurtado was not additionally charged with obstructing justice. Although Bell now contends he was motivated by protecting his family, not by a desire to obstruct Hankton's prosecution, he has admitted the Count Two allegations of obstruction of justice and therefore cannot deny an intent to obstruct. Therefore, in the present case it is appropriate to apply § 2J1.2 as the analogous provision under § 2X5.1. See, e.g., United States v. Alwan, 279 F.3d 431, 440 (7th Cir. 2002). Moreover, as previously noted, even if not applied to the Count One contempt charge, § 2J1.2 would still apply to the Count Two obstruction of justice charge that is grouped with the contempt count. Whether applied directly on Count Two, or analogously on Count One, there is no factual basis for not applying the cross reference contained in § 2J1.2(c)(1) based on the offense involving obstructing the investigation or prosecution of a criminal offense.

Under § 2J1.2(a), the base offense level is 12. Under § 2J1.2(b)(2), three levels are added if the obstruction resulted in substantial interference with the administration of justice.

That is defined as "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence, or the unnecessary expenditure of substantial government or court resources." Id. comment. (n.1). The three-level adjustment would apply because the result of Bell not testifying appears to be that the prosecution of Hankton will be dropped, and even if not dropped, it has been substantially delayed, will be more difficult to prosecute, and substantial expenditures have resulted. In any event, Bell concedes it is appropriate to add these three levels. The offense level would then be 15. However, § 2J1.2(c)(1) also provides that: "If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined" under subsections (a) and (b). This is the calculation that the probation officer employed.

Under § 2X3.1, the offense level is set at six levels lower than that for the underlying offense, but not less than 4 nor more than 30. The probation officer incorrectly refers to Bell's state court prosecution for first degree murder as the underlying offense. PSR at 4, lines 110-12. While the murder is the ultimate offense to look at, it is not directly the underlying offense. The actual underlying offense is the § 1959 racketeering offense charged in Hankton's federal indictment. The guideline for the § 1959 offense is § 2E1.3. Under § 2E1.3,

the offense level is the greater of 12 or the offense level applicable to the underlying crime or racketeering activity. The most serious underlying crime that is charged as racketeering is alleged in Count Two of Hankton's indictment, which charges the racketeering activity as being the murder of Annette Williams in violation of 720 ILCS 5/9-1(a)(3).

"If the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." U.S.S.G. § 2E1.3, comment. (n.1). The referenced Illinois murder statute is first degree murder based on causing death while committing a forcible felony.

The federal murder statute provides:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
> Any other murder is murder in the second degree.

18 U.S.C. § 1111(a).

The federal murder statute does not define causing death during the commission of a forcible felony such as battery as being federal first degree murder. The analogous federal offense to the referenced state racketeering offense would be federal second degree murder. Both Bell and the government agree that

second degree murder is the analogous federal offense to apply under § 2E1.3. Although the PSR's calculation is based on assuming the analogous federal offense is first degree murder (U.S.S.G. § 2A1.1), for some reason both parties believe this error did not affect the guideline range calculation. However, it did affect the calculation. The offense level for second degree murder is 33. <u>Id.</u> § 2A1.2. Reducing by six levels as is required under § 2X3.1, the adjusted offense level is 27, not the 30 maximum that is calculated using first degree murder.

In determining the total offense level, the adjusted offense level of 27 is to be reduced three levels for acceptance of responsibility, for a total offense level of 24. With a criminal history category of IV,[4] the correct guideline range is 77 to 96 months. The probation officer will be directed to accordingly modify the PSR.

Guideline 5G1.3 provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

---

[4]There is no dispute as to the appropriate criminal history category.

- 9 -

> (c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

The background commentary to this guideline further provides:

> In a case in which a defendant is subject to an undischarged sentence of imprisonment, the court generally has authority to impose an imprisonment sentence on the current offense to run concurrently with or consecutively to the prior undischarged term. 18 U.S.C. § 3584(a). Exercise of that authority, however, is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission.

U.S.S.G. § 5G1.3 comment. (backg'd.).

Noting the inconsistency with the permissive language of 18 U.S.C. § 3584(a) and also noting the background commentary, the Seventh Circuit has held that the rule stated in § 5G1.3(a) is not mandatory. See United States v. Schaefer, 107 F.3d 1280, 1284-86 (7th Cir. 1997), cert. denied, 522 U.S. 1052 (1998). See also United States v. O'Hara, 301 F.3d 563, 571 (7th Cir.), cert. denied, ___ S. Ct. ___ (Dec. 2, 2002). Instead, § 5G1.3(a) creates a presumption in favor of a consecutive sentence, but the court has the discretion to depart from the presumption. See Schaefer, 107 F.3d at 1285. In doing so, the court "must set forth the 'specific reason' why it has opted to do so. In effect, to order a concurrent sentence despite the applicability of § 5G1.3(a), the district court must specifically articulate

the reasons why it believes the particular case falls outside the Guidelines' 'heartland.'" Id. This includes considering the factors enumerated in 18 U.S.C. § 3553(a). Id. at 1286.

In the present case, there are certainly arguable grounds for finding that Bell's situation falls outside the heartland of those cases covered by § 5G1.3(a). Section 5G1.3(a) literally applies to Bell's situation because the obstructive behavior constituting the present offenses, that is, refusing to testify in 2001, occurred while Bell was serving his state term of imprisonment for the murder. However, as was discussed above, the manner in which the guideline range is calculated is based on treating Bell as if he is an accessory to the murder itself. The murder did not occur while Bell was in prison. Thus, by imposing a consecutive term of imprisonment, Bell would be serving one term based on the murder and then serve another fully consecutive term also based in large part on the same murder.

It may also be appropriate to consider the term that would have been imposed had Bell been directly charged with murder in federal court. If Bell had been found guilty of second degree murder in federal court, his offense level would be 33 as indicated above. Reducing that by three levels for acceptance of responsibility, the total offense level would be 30. Also, if being sentenced on a second degree murder charge in this court, his criminal history category would not be IV. The only criminal history points would be three points for his prior stolen vehicle offense for a criminal history category of II. The guideline

range for a total offense level of 30 and criminal history category II is 108-135 months.[5] On his state sentence, though, Bell will serve a minimum of 240 months, and possibly up to 480 months if he is not paroled at the earliest possible date. Thus even without imposing any consecutive time for the present offenses, Bell will serve more time in prison that he would have if prosecuted for second degree murder in the present case. That may be another reason not to impose the 77 to 96 months fully consecutive.

No ruling is presently being made as to whether the court will exercise discretion to depart from the consecutive sentence provision of § 5G1.3(a). At the sentencing hearing, the parties shall be prepared to address the question of whether the court should so exercise its discretion. In doing so, they shall address the considerations outlined above, those previously raised in the parties' memoranda, and any appropriate § 3553(a) factors.

Additionally, in the event the court exercises its discretion, the parties must be prepared to address the appropriate consecutive sentence to impose. Defendant has suggested that the appropriate consecutive sentence would be 24 to 30 months based on the resulting guideline range if

---

[5]If it is considered that defendant also obstructed justice related to second degree murder, a two-level adjustment would be made, see U.S.S.G. § 3C1.1, for a total offense level of 32. Total offense level 32 and criminal history category II would be a guideline range of 135 to 168 months. That is an additional 27 to 33 months.

subsections (a) and (b) of § 2J1.2 were to be applied, but not subsection (c).⁶ Another possible guide is the additional 27 to 33 months that would have been added by an obstruction of justice adjustment to a federal second degree murder sentencing. Again, no decision is being made at this time. These possibilities are only being noted so that the parties will be prepared to address them at the time of sentencing.

Furthermore, in the event a partially consecutive sentence is to be imposed, it may be necessary to consider any effect being detained for civil contempt had on the state sentence being served and whether any such effect should be taken into consideration in determining the present sentence. As previously stated, this includes the parties informing the court as to whether defendant received credit for serving his state sentence during the time he was being held in civil contempt.

IT IS THEREFORE ORDERED that defendant's objections to the presentence report are granted in part and denied in part. At the time of sentencing, the probation officer will be directed to modify the presentence investigation report to reflect the modifications discussed herein that result in a sentencing guideline range of 77 to 96 months. It is further ordered that,

---

⁶Under § 2J1.2(a), the base offense level is 12 and three levels are added for substantial interference with the administration of justice under § 2J1.2(b)(2). Reducing by two levels for acceptance of responsibility, the total offense level would be 13 and the guideline range would be 24 to 30 months based on criminal history category IV.

at the time of sentencing, the parties be prepared to address the other issues discussed herein.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 10, 2002